### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| ALI SINA KARIMI, | ] | |
| | ] | |
| Petitioner, | ] | |
| | ] | |
| v. | ] | 4:12-cv-0669-RDP-RRA |
| | ] | |
| ERIC HOLDER, et al., | ] | |
| | ] | |
| Respondents. | ] | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241.

The petitioner, Ali Sina Karimi, a native and citizen of Afghanistan, is incarcerated at the

Etowah County Jail, in the custody of the Bureau of Immigration and Customs Enforcement

("ICE").  In the petition, Karimi alleges that he is being illegally detained, in violation of

*Zadvydas v. Davis*, 533 U.S. 678 (2001), pending his deportation to Afghanistan.  In response

to the court's order to show cause, the respondents have filed a response in which they

maintain that the petition is due to be dismissed.  The petitioner has filed a traverse.

On May 22, 2008, Karimi was convicted of second degree assault in the Circuit Court

for Montgomery County, Maryland.  *Declaration of Assistant Field Office Director Gerald*

*Smith*, Exhibit1 to Respondents' Answer, Court Document 4-1, at 1.  Karimi was taken into

ICE custody on August 21, 2008.  *Id*.  On November 14, 2008, ICE issued a Notice to

Appear, charging the petitioner with being removable under § 237(a)(2)(A)(iii) of the

Immigration and Nationality Act. *Id*.  On March 2, 2011, an immigration judge in Baltimore,

Maryland ordered that Karimi be removed to his native country of Afghanistan. *Id*. Karimi appealed the removal order, but his appeal was dismissed on August 3, 2011. *Id*. On August 19, 2011, Karimi filed a motion to reopen the appeal of the removal order. *Id*. at 2. The Board of Immigration Appeals denied the motion to reopen his appeal on November 2, 2011. *Id.*

ICE has issued two Decisions to Continue Karimi's detention. The first one was issued on November 16, 2011, and served on Karimi on November 25, 2011 and again on January 24, 2012. *Id*. The second was issued on February 9, 2012, and served on Karimi on February 16, 2012. *Id*. On September 8, 2011, ICE submitted a request for a travel document to the Embassy of Afghanistan in Washington, D.C. *Id*. ICE last contacted the Embassy of Afghanistan on March 26, 2012, and was advised that the request for a travel document for Karimi is still pending. *Id*. Assistant Field Office Director Gerald Smith avers that:

> The Government of Afghanistan has not declined to issue a travel document in the petitioner's case. The Government of Afghanistan has issued travel documents in the past, and there is no reason to believe that the Government of Afghanistan will not issue a travel document in this matter. Based upon this officer's experience and expertise, I believe that ICE will secure a travel document for the petitioner from the Government of Afghanistan in the reasonable foreseeable future.

*Id*.

The petitioner asserts that his "continued detention by Respondent is unlawful and contravenes 8 U.S.C. § 1231(a)(6)[1] as interpreted by *Zadvydas*" because he "still has not been removed" and he "continues to languish in detention." *Petition* at 13.  Additionally, he alleges due process violations. *Id*. at 13-15.

The petitioner's detention pending removal from the United States is governed by section 241(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a).  That section provides that the Attorney General is afforded a 90-day period to accomplish the alien's removal from the United States following the entry of a final order of deportation or removal, or, if the alien is confined, the date the alien is released from confinement. *See* 8 U.S.C. § 1231(a)(1)(A)-(B).  During the 90-day period, Congress has mandated the detention of an alien who has been ordered removed. *See* 8 U.S.C. § 1231(a)(2).  The Attorney General may continue to detain an alien after the expiration of the 90-day removal period.  *See* 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis,* 533 U.S. 678 (2001), the United States Supreme Court held that section 241(a) of the INA authorizes detention, after entry of an administratively final order of deportation or removal, for a period "reasonably necessary" to accomplish the alien's

---

[1] Section 1231(a)(6) provides:

Inadmissible or criminal aliens

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

removal from the United States. *Zadvydas*, 533 U.S. at 699-700. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal after the removal period has commenced. *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* As long as removal is reasonably foreseeable, the alien's potential dangerousness or risk of his committing further crimes may be considered in determining whether to retain custody. *Zadvydas*, 533 U.S. at 700.

Additionally, certain acts by an alien can allow the government to legally continue his detention. Section 1231(a)(1)(C) states:

> [t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make a timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C); *see also* 8 C.F.R. § 241.4(g)(5)(I).

The petitioner argues that he has been detained for over forty-five months and that his "post-removal period confinement has thus been more than [40 months] more than of what is considered presumptively reasonable." *Petitioner's Traverse*, Court Document 5 at 20. The "removal period" starts on the latest of the following:

(i)   The date the order of removal becomes administratively final;

(ii)   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or

(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  However,

If—during the period of removal triggered by the then-latest of the three above-listed events applicable to a particular alien—the alien is subjected to a qualifying superceding event, e.g., the alien is released from confinement, or if this alien is detained on a new charge, or the alien files an appeal challenging his/her order of removal, such superceding event start the alien's removal period anew.  *See* 8 U.S.C. § 1231(a)(1)(B).

[Indeed, there cannot] be ["]only one["] removal period[:] . . . that is the only rational reading of the statute. . . . [T]he statute provides that the removal period begins on the latest of several dates.  The passing of one date does not stop the operation of the statute.  In a sense, the only way to apply the statute to a given situation is retrospectively.  That is, the removal period begins when the removal order becomes final.  If a court issues a stay, the removal period begins [anew] when the stay is lifted [or when such new appellate proceeding ends].  Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred.  If there is another [potential triggering] event, there is another potential beginning date for the removal period.  The only sensible reading of this provision is that [DHS] is required to effectuate the removal within 90 days of certain events, but [DHS] will have another 90 days if another one of the [statutorily-]designated events occurs at a later date.  The obvious reason for this is that [DHS]'s authority to effect the removal is suspended due to the occurrence of the later event.

*Michel v. INS*, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000).

*Pierre v. Mukasey*, Civil Action No. 08–6286 (PGS), 2009 WL 464444, at *2 (D.N.J. February 24, 2009)(citations omitted).

Karimi seems to argue that the six-month presumptively reasonable removal period began to run on August 21, 2008, when he was first taken into ICE custody.  According to his theory, the six-month presumptively reasonable period would have expired on February 21, 2009.  However, the removal period could not have begun in 2008, since Karimi was not under a final order of removal at the time.  Karimi's removal order became administratively final on August 3, 2011, when the Board of Immigrations Appeals dismissed the appeal of Karimi's removal order.  Thus, the *Zadvydas* period initially began to run on August 3, 2011.  However, Karimi filed a motion to reopen the appeal of his final removal order on August 19, 2011, which ended the original *Zadvydas* period, since Karimi could not have been deported while he was appealing the final removal order.  The six-month presumptively reasonable *Zadvydas* period began anew on November 2, 2011, when the Board of Immigration Appeals denied the motion to reopen his appeal.[2]

---

[2]      The very fact that the BIA dismissed—rather than granted—Petitioner's motion is of no effect on this Court's analysis since the DHS's power to remove Petitioner while the motion was pending was just as suspended as it was during the time when Petitioner's initial appeal was pending with the BIA prior to his withdrawal: the DHS had no more ability to predict whether the BIA denies or grants the motion that it had the ability to predict how the BIA would rule on Petitioner's appeal before it was withdrawn. . . . Finding otherwise would create an anomalous legal regime allowing an alien to keep filing and withdrawing BIA appeals, hence paralyzing DHS's ability to remove the alien, and then-after six months of such filings and withdrawals, assert that the alien's *Zadvydas*-based rights were violated because DHS did not succeed in removing the alien during the brief gaps between the aliens filings and withdrawals. *See Pelich v. INS*, 329 F.3d 1057 (9th Cir. 2003) ( "*Zadvydas* does not save

Since the petitioner's current six-month presumptively reasonable removal period did not begin to run until November 2, 2011, it will not expire until May 2, 2012.  In *Akinwale*, the Eleventh Circuit Court of Appeals held that the six-month period "must have expired at the time [the petitioner's] petition was filed in order to state a claim under *Zadvydas*." *Akinwale*, 287 F.3d at 1052.   Because Karimi has not been detained beyond the six-month presumptively reasonable time established in *Zadvydas*, as required in *Akinwale*, his current detention is fully lawful, and this action is due to be DISMISSED.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, the magistrate judge recommends that the respondents' motion for summary judgment be GRANTED and that the petition be DISMISSED.

Any party may file specific written objections to this report within fifteen (15) days of the date it is filed in the office of the Clerk.  Any objections filed must specifically identify the findings in the magistrate judge's recommendation to which the objections pertain.  Frivolous, conclusive, or general objections will not be considered by the District Court.  Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a de novo determination by the District Court of issues

---

> an alien who [asserts violation of his right on the basis of mere passage of six months]. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock").

*Pierre v. Mukasey*, Civil Action No. 08–6286 (PGS), 2009 WL 464444, at *3, n.4 (D.N.J. February 24, 2009).

covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  A copy of the objections must be served upon all other parties to the action.

The Clerk is DIRECTED to serve a copy of this Report and Recommendation upon the petitioner and counsel for the respondent.

Done this 18th day of April, 2012.


_____

ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE